DECISION
{¶ 1} Relator, Mary Reid, seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting relator temporary total disability ("TTD") compensation beginning July 29, 2003, and to grant TTD compensation beginning November 13, 2002. In the alternative, relator requests a limited writ of mandamus ordering the commission to conduct full hearings and to reconsider the start date of her TTD compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that this court grant relator's request for a writ of mandamus ordering the commission to set the start date of her TTD compensation at either December 2, 2002 or February 12, 2003, and to provide the explanation required by State ex rel. Noll. v. Indus. Comm. (1991),57 Ohio St.3d 203. (See attached Appendix A.) No objections have been filed to the recommendation of the magistrate.
 {¶ 3} Finding no error or other defect on the face of the magistrate's decision, ursuant to Civ.R. 53(C), we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is granted and the commission is ordered to vacate its order granting relator TTD compensation beginning July 29, 2003, and to grant relator TTD compensation commencing either December 2, 2002 or February 12, 2003, and to provide the explanation required byNoll.
 Writ of mandamus granted.
Bryant and McCormac, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Mary Reid, : Relator, : v. : No. 04AP-19 Community Mutual Insurance Co. and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 22, 2004 Koltak Gibson, L.L.P., Ronald J. Koltak and Peter J.Gibson, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} Relator, Mary Reid, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting relator temporary total disability ("TTD") compensation beginning July 29, 2003, and finding that she is entitled to begin receiving TTD compensation beginning November 13, 2002. In the alternative, relator requests a limited writ of mandamus ordering the commission to conduct full hearings and reconsider the start date of her TTD compensation.
Findings of Fact:
 {¶ 5} 1. Relator sustained a work-related injury on May 7, 1987, and her claim has been allowed for: "contusion to head, injury to neck, low back and both shoulders; C5-C6 displacement, brachial neuritis-right."
 {¶ 6} 2. Relator underwent an anterior cervical diskectomy and interbody fusion in April 2000.
 {¶ 7} 3. By order dated July 31, 2002, a district hearing officer ("DHO") found that relator had reached maximum medical improvement ("MMI") and terminated her TTD compensation as of that date. The DHO relied upon the May 3, 2002 report of Dr. David M. Vaziri who stated, in pertinent part, as follows in his report:
* * * Currently Ms. Reid continues to complain of neck, shoulder and back discomfort. She complains of headaches that are referred from the posterior aspect of the neck. She complains of locking in her neck. She describes the pain in her neck, shoulders and low back as sharp and burning in nature aggravated with prolonged standing, walking or sitting. * * *
* * *
* * * I believe, Ms. Mary Reid has reached maximal medical improvement. * * * [T]he patient has healed fully from the cervical spine surgery based on a report from June 27, 2001. * * * [T]he patient has been given appropriate physical therapy as recommended by Dr. William Reynolds * * *. At this time, I believe that most of the patient's complaints are related to chronic pain that would not be alleviated nor would I suspect fundamental functional or physiological changes with further medical rehabilitative treatment.
 {¶ 8} Dr. Vaziri opined further that relator would not be able to return to her former position of employment and that, in his opinion, she probably could not even perform sedentary employment on a full-time basis.
 {¶ 9} 4. On July 16, 2003, relator filed a motion requesting the payment of TTD compensation from November 13, 2002 through the present and continuing. In support, relator attached the November 13, 2002 report of Dr. Daryl R. Sybert who indicated that she continues to have debilitating neck and back pain, that she is not able to do her home exercise program and she has more headaches. Dr. Sybert recommended that relator have a CT scan with sagittal reconstruction of the cervical spine to assess her bone quality. His assessment included the following: "1. Chronic neck pain status post ACDF C3-4 and C5-6 with congenital blocked vertebra C4-5," and "2. Rule out pseudoarthrosis." Relator also attached the February 12, 2003 report of Dr. Sybert which was written after her most recent CT scan in December 2002. Dr. Sybert noted that relator "continues to complain of neck pain, which has progressively worsened," and recommended the following treatment:
* * * At this point she has been offered a revision pseudoarthrosis procedure at the C5-6 level, which would encompass a partial corpectomy at C5 with a structural allograft and utilization of a titanium locking plate at C5-6.
 {¶ 10} Relator also attached the June 19, 2003 C-84 of Dr. Emmart Hoy opining that she was temporarily totally disabled from November 13, 2002 through an estimated return-to-work date of August 18, 2003. He noted that surgery was planned for her.
 {¶ 11} 5. The surgery was performed on July 29, 2003.
 {¶ 12} 6. Relator's motion for TTD compensation was heard before a DHO on September 15, 2003. The DHO granted TTD compensation from July 29, 2003, the date of relator's surgery, through the date of hearing and to continue upon submission of evidence. With regard to relator's request for TTD compensation from November 2002, the DHO noted as follows:
* * * The claimant's request for temporary total compensation from 11/13/2002 through 07/28/2003, is specifically denied. The C-84 reports from Dr. Hoy which support the requested period of disability from 11/13/2002 through 07/28/2003 are not found persuasive in demonstrating sufficient new and changed circumstances to render the claimant temporarily and totally disabled again for that period. The C-84 of Dr. Hoy dated 06/19/2003 simply states "surgery planned".
 {¶ 13} 7. In support of her appeal, relator attached the October 10, 2003 report of Dr. Hoy wherein he stated as follows:
I examined Ms. Reid five times between November 13, 2002 and July 28, 2003; always for radicular neck pain. An MRI dated December 02, 2002 revealed a C5-6 pseudoarthrosis.
Ms. Reid also was followed by her orthopedic surgeon, Dr. Sybert.
On November 13, 2002 he mentioned debilitating neck pain. On February 12, 2003, he mentioned progressively worsening neck pain and noted a graft fragmentation. On her May 28, 2003 exam it was stated that she would need a surgical revision.
Also, an IME (Dr. Vaziri) May 03, 2002 concluded that the claimant was totally disabled.
Ms. Reid underwent revision surgery on July 31, 2003.
The above events clearly demonstrate "new and changed (deterioration) circumstances" to support her disability from November 13, 2002 through July 28, 2003.
 {¶ 14} 8. Relator's appeal was heard before a staff hearing officer ("SHO") on October 20, 2003. The SHO affirmed the prior DHO order as follows:
It is found that the District Hearing Officer correctly evaluated the evidence and issues. Payment of temporary total compensation is denied from 11/13/2002 through 07/28/2003. There had been a finding of maximum medical improvement by District Hearing Officer order of 07/31/2002. The injured worker's condition continued to worsen, leading to the scheduling of surgery on 07/29/2003. The 07/29/2003 represents the date of "new and changed circumstances" sufficient to re-start payment of temporary total compensation. Payment of temporary total compensation is ordered from 07/29/2003 through 11/16/2003, and continue upon submission of supporting medical evidence. This is supported by C-84 forms from Dr. Hoy. The 10/10/2003 report of Dr. Hoy, as well as Bing II have been considered, but those are not found to support payment from 11/13/2002 through 07/28/2003, based on the facts in this case.
 {¶ 15} 9. Further appeal was refused by order of the commission mailed November 19, 2003.
 {¶ 16} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 17} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 18} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost or a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation is paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician has made a written statement that the claimant is capable of returning to their former position of employment; (3) when work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) when the claimant has reached MMI. The term "maximum medical improvement" is defined in Ohio Adm. Code4121-3-32(A)(1) as follows:
* * * [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function.
 {¶ 19} In the present case, when relator was found to have reached MMI, her TTD compensation was terminated.
 {¶ 20} It has been recognized that, even where TTD compensation payments have been previously terminated, for any of the enumerated reasons, R.C. 4123.53 grants the commission continuing jurisdiction to award TTD compensation where the claimant has again become temporarily totally disabled. State exrel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424. As the court reasoned, a condition may worsen or, even if the condition has reached MMI, it can "flare up," thereby rendering the claimant again temporarily totally disabled.
 {¶ 21} Relator contends that the evidence she presented clearly demonstrated that she was entitled to receive TTD compensation again. Although the commission noted that relator's condition has worsened, the commission denied TTD compensation until the surgery date on the basis that relator had not demonstrated "new and changed circumstances."
 {¶ 22} In support of her motion to renew the payment of TTD compensation, relator attached reports from Dr. Sybert. Those reports indicate that she continued to have pain in her neck and back and that he wants to rule out certain additional problems. However, following the December 2, 2002 CT scan, Dr. Sybert recommended that relator have surgery, because of the pseudoarthrosis C5-6. This is "some evidence" that relator's condition had worsened. Thereafter, in his February 12, 2003 report, Dr. Sybert specifically stated that relator's condition had worsened. At the least, the evidence supports a start date for TTD compensation of either December 2, 2002, the date of the CT scan, or February 13, 2003, the date Dr. Sybert specifically stated that her condition had worsened.
 {¶ 23} Based on the foregoing, this magistrate concludes that relator has demonstrated that the commission abused its discretion in granting her TTD compensation beginning July 29, 2003, and this court should grant relator's request for a writ of mandamus, and order the commission to set the start date at either December 2, 2002 or February 12, 2003, and provide the requisite explanation required by State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203.
 /s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS MAGISTRATE