DECISION
{¶ 1} Relator, Billie Paul Conley, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied her temporary total disability ("TTD") *Page 2 
compensation and to award TTD compensation from July 21, 1999 through January 5, 2006.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision. `
 {¶ 3} Relator argues in her first objection that the magistrate failed to address her assertion that the commission's decision violated the provisions of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Relator contends it is not readily apparent from the four corners of the staff hearing officer's ("SHO") order what evidence was relied upon in finding that there was no change in circumstances, despite the fact that relator submitted evidence that her claim was amended since the maximum medical improvement ("MMI") finding in 1999, and she underwent treatment for the newly allowed conditions for the eight years since that finding.
 {¶ 4} Pursuant to Noll, the commission must specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. Although here the magistrate acknowledged relator'sNoll argument in her decision, she did not address it directly. However, the magistrate did discuss the evidence from the commission's orders that supported its determinations. Specifically, the magistrate indicated that the SHO cited Dr. Thomas Goodall's January 11, 2006 C-84, his December 5, 2006 C-84, and the district hearing officer's ("DHO") July 21, 1999 order, in which the DHO found relator had reached MMI for the initial allowed conditions in the claim. Our own review of the SHO's *Page 3 
order confirms that the SHO specified the evidence relied upon and explained the reasoning for his decision. In rejecting relator's TTD from July 21, 1999 through January 5, 2006, the SHO specifically referred to Dr. Goodall's January 11, 2006 C-84, his December 5, 2006 C-84, and the DHO's July 21, 1999 order. This was the only evidence necessary for the SHO to conclude that relator had failed to submit evidence of new and changed circumstances proving that the allowed conditions temporarily prevented her from returning to work at her position of employment. The SHO found the January 11, 2006 C-84 unconvincing because it certified periods of disability based upon the same conditions previously found in the DHO's July 21, 1999 order to have reached MMI, and also found the December 5, 2006 C-84 unpersuasive because Dr. Goodall could point to no treatment for the newly allowed conditions from July 21, 1999 to January 5, 2006. Thus, although the magistrate did not explicitly address relator's Noll argument, it is apparent from the magistrate's decision that the commission specified in its order the evidence relied upon and briefly explained the reasoning for the decision. Therefore, relator's objection is without merit.
 {¶ 5} Relator argues in her second objection that the magistrate erred when she concluded that the commission did not abuse its discretion in failing to find new and changed circumstances existed earlier than January 2006. Relator contends she provided ample evidence to the commission of new and changed circumstances that would warrant an award of TTD from July 21, 1999 to January 5, 2006. Although relator contends that she provided medical proof of her new and changed circumstances, and that the magistrate failed to explain why her circumstances do not fall within the standards set by other Ohio courts to justify the reinstatement of TTD, we find the magistrate did *Page 4 
explain why relator's evidence was insufficient to demonstrate new and changed circumstances. Relator fails to address the magistrate's finding that Dr. Goodall initially certified disability for this period in his January 11, 2006 C-84 based upon conditions that had previously been found to have reached MMI, but then later certified disability for this same period in his December 5, 2006 C-84 based solely on newly allowed conditions. The magistrate explained that the two conflicting C-84s raised an inconsistency and cast sufficient doubt on whether any conditions were new or resulted in a change in circumstances. The magistrate further found that a review of Dr. Goodall's office notes from 1999 until January 2006 failed to show any conditions or symptoms resulting from any new and changed circumstances; rather, the conditions and symptoms for this period all were consistent with the previous conditions found to have reached MMI. Therefore, we find the magistrate did not err in this respect, and relator's objection is overruled.
 {¶ 6} After an examination of the magistrate's decision, an independent review of the evidence pursuant to Civ. R. 53, and due consideration of relator's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 BRYANT and SADLER, JJ., concur. *Page 5 
 {¶ 7} Relator, Billie Paul Conley, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to grant her temporary total disability ("TTD") compensation from July 21, 1999 through January 5, 2006. *Page 6 
Findings of Fact: {¶ 8} 1. Relator sustained a work-related injury on November 22, 1983.
 {¶ 9} 2. Relator's claim was originally allowed for "herniated nucleus pulposus L4-5; urethritis and urethral stricture; cervical sprain and radiculitis; somatoform pain disorder and depression; mild chronic left L5 lumbar radiculopathy; aggravation of pre-existing degenerative discovertebral changes at C3-4, C4-5 and C5-6 levels." Relator was awarded TTD compensation for these conditions until July 20, 1999, when the commission determined that those conditions had reached maximum medical improvement ("MMI").
 {¶ 10} 3. By order dated November 22, 2005, relator's claim was additionally allowed for "cervical radiculopathy."
 {¶ 11} 4. Relator submitted a C-84 from Thomas F. Goodall, D.O., dated January 11, 2006, wherein Dr. Goodall certified a period of disability from November 22, 1983 through an estimated return-to-work date of January 6, 2006. This period of disability was based on the conditions of cervical and lumbar disc displacement. Dr. Goodall noted that relator had neck and low back pain.
 {¶ 12} 5. On August 21, 2006, relator filed a C-84 dated motion dated August 11, 2006, seeking the payment of TTD compensation from January 6 through October 25, 2006, based on the following conditions: "Cerebral ANOS w/infarct," "Cerebral ANOS w/o infarct," "Neurogenic b[l]adder NOS," and "other malaise [and] fatigue." Dr. Goodall noted the following clinical findings as the basis for his recommendation: "loss of bladder control." *Page 7 
 {¶ 13} 6. Following an R.C. 4123.512 appeal, in September 2006, relator's claim was additionally allowed for "herniated cervical disc at C5-6; lacunar infarction right frontal region; neurogenic bladder; dysphagia; lingual weakness; cricopharyngeus."
 {¶ 14} 7. Relator's motions were heard before a district hearing officer ("DHO") on November 6, 2006 and resulted in an order granting TTD compensation from January 6 to November 25, 2006 based on the August 11, 2006 C-84 of Dr. Goodall, wherein he opined that relator's newly allowed conditions prevented her from returning to her former position of employment. However, the DHO denied relator's request for TTD compensation beginning July 20, 1999 through January 5, 2006, for the following reasons:
 The District Hearing Officer finds that the evidence submitted by the injured worker in support of the request for temporary total disability compensation from 07/21/1999 through 01/05/2006 provides no evidence of new, altered circumstances related to the allowed conditions in this claim which prevented the injured worker's return to work at her position of employment during said period.
 The District Hearing Officer finds that the C-84 of Dr. Goodall, dated 01/11/2006 describes the injured worker to have been off work during said period due, exactly, to the same conditions considered by the District Hearing Officer on 07/20/1999 when the injured worker's temporary total disability compensation was terminated based upon a finding of maximum medical improvement.
 The District Hearing Officer finds that there has not been submitted evidence of new and changed circumstances proving that the injured worker's allowed conditions temporarily prevent her from returning to work at her position of employment.
 {¶ 15} 8. Relator appealed and submitted another C-84 from Dr. Goodall dated December 5, 2006, wherein Dr. Goodall certified a period of disability from July 21, 1999 *Page 8 
through February 28, 2007 due exclusively to the newly allowed conditions. Dr. Goodall listed the prior MRI of relator's head and bladder studies as the objective basis for his opinion. Relator also submitted office treatment notes from September 7, 1999 through November 28, 2006. A review of those office notes indicates that Dr. Goodall continued to treat relator for cervical and lumbar pain throughout the entire period. Relator began experiencing paresthesia as early as January 20, 2000. Several times, Dr. Goodall noted that relator's conditions were essentially unchanged (April 4, 1999; May 17, 2001; and November 28, 2006). Dr. Goodall's office notes first mention bladder control problems in February 2001. The majority of relator's complaints involved cervical and lumbar pain from 1999 on.
 {¶ 16} 9. Relator's appeal was heard before a staff hearing officer ("SHO") on January 24, 2007. The SHO affirmed the prior DHO's order with additional findings. The SHO explained why TTD compensation was being denied from July 21, 1999 through January 5, 2006, as follows:
 The Staff Hearing Officer finds that the evidence submitted by the injured worker in support of the request of temporary total disability compensation benefits from 07/21/1999 through 01/05/2006 does not establish by a preponderance of the evidence a change in circumstance supporting the requested period of said benefits.
 On the C-84 of Dr. Goodall, dated 01/11/2006, he states that the injured worker is disabled for this period of time based upon the conditions found by a District Hearing Officer in an Order dated 07/20/1999 to have reached maximum medical improvement. The C-84 of Dr. Goodall, dated 01/11/2006, does not include any newly allowed conditions or any change in circumstance with respect to the previously allowed conditions, to support the requested period of disability. The only subjective complaints noted are NECK PAIN and LOW BACK PAIN. The only objective complaints *Page 9 
noted were a CERVICAL DISC DISPLACEMENT and LUMBAR DISC DISPLACEMENT. These conditions and complaints were found to have reached maximum medical improvement as noted above.
(Emphasis sic.)
 {¶ 17} The SHO concluded that TTD compensation was payable from January 6, 2006 forward for the following reasons:
 With respect to the injured worker's request for payment of temporary total disability compensation benefits from 01/06/2006 forward, the Staff Hearing Officer finds that the injured worker has submitted probative and reliable medical evidence from Dr. Goodall, including a C-84 report dated 12/05/2006, which establishes that the newly allowed conditions in the claim are temporarily disabling for the period from 01/06/2006 through an estimated 02/28/2007. Accordingly, temporary total disability compensation benefits are ordered paid for this period of time, less any accident and sickness benefits received by the injured worker from this employer.
 It is the order of the Hearing Officer that further temporary total disability compensation is to be paid upon submission of medical evidence which documents the injured worker's continued inability to return to and perform the duties of the injured worker's former position of employment as a result of the allowed conditions in this claim.
 The Staff Hearing Officer does not find persuasive Dr. Goodall's argument that the injured worker was disabled due to the newly allowed conditions for the period from 07/21/1999 through 01/05/2006. Dr. Goodall points to no treatment during this period of time for these conditions.
 {¶ 18} 10. Relator's further appeal was refused by order of the commission mailed February 17, 2007.
 {¶ 19} 11. Thereafter, relator filed the instant mandamus action in this court. *Page 10 
Conclusions of Law: {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 21} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 22} In this mandamus action, relator contends that the commission abused its discretion as follows: failed to address the December 5, 2006 C-84 of Dr. Goodall; *Page 11 
misconstrued the December 5, 2006 C-84 of Dr. Goodall; and violatedState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, by failing to address relator's new and changed circumstances.
 {¶ 23} For the reasons that follow, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion and this court should deny relator's request for a writ of mandamus.
 {¶ 24} In the present case, relator's TTD compensation was terminated by the DHO's order dated July 20, 1999. The DHO determined that relator's originally allowed conditions had reached MMI. Those conditions included "herniated nucleus pulposus L4-5; urethritis and urethral stricture; cervical sprain and radiculitis; somatoform pain disorder and depression; mild chronic left L5 lumbar radiculopathy; aggravation of pre-existing degenerative discovertebral changes at C3-4, C4-5 and C5-6 levels." Later, relator's claim was additionally allowed for "herniated cervical disc at C5-6; lacunar infarction right frontal region; neurogenic bladder; dysphagia; lingual weakness; cricopharyngeus."
 {¶ 25} When looking at the originally allowed conditions and the newly allowed conditions, the magistrate notes that there is some overlapping with regard to certain body parts. For instance, relator's claim was originally allowed for aggravation of preexisting degenerative disc discovertebral changes at C3-4, C4-5, C5-6, cervical sprain and radiculitis. Relator's newly allowed conditions include cervical radiculopathy. These conditions involved the same body parts and have overlapping symptoms. Further, relator's claim was originally allowed for urethritis and urethral stricture. Later, relator's claim was allowed for neurogenic bladder condition. The originally allowed conditions of urethritis and urethral stricture involved the urethra (the tube for the discharge of urine *Page 12 
extending from the bladder to the outside). Her newly allowed neurogenic bladder condition specifically deals with the nerves in that area. Again, they involved the same body part and have some overlapping symptoms.
 {¶ 26} A claimant whose disability has become permanent may not receive TTD compensation. Ramirez. However, there are some instances where TTD compen-sation can be reinstated despite a prior finding of permanency. For example, allowed conditions can flare up at a later time and render the claimant again temporarily totally disabled. SeeState ex rel. Bing v. Indus. Comm. (1991), 61 Ohio St.3d 424. Further, the allowance of new conditions can constitute a new and changed circumstance warranting the payment of TTD compensation. See State exrel. Basye v. Indus. Comm. (1992), 64 Ohio St.3d 68.
 {¶ 27} Upon review of the record and the commission's orders, one of relator's problems is that her treating physician, Dr. Goodall, certified periods of disability based upon conditions which had previously been found to have reached MMI. The fact that he later certified disability based solely on newly allowed conditions does not remove the inconsistency in his opinions recognized by the commission. As the SHO noted, Dr. Goodall's January 11, 2006 C-84 does not include any newly allowed conditions nor does it include any change in circumstance with respect to the previously allowed conditions to support the requested period of disability.
 {¶ 28} Dr. Goodall's other C-84s (August 11 and December 5, 2006) attribute relator's disability solely to her newly allowed conditions. In the August C-84, Dr. Goodall certified a period of disability beginning January 6, 2006. His December C-84 certified disability from July 1999 forward based solely upon the newly allowed conditions. *Page 13 
 {¶ 29} Considering all three of Dr. Goodall's C-84s, the magistrate concludes that the commission did not abuse its discretion in determining that the evidence did not support the request of TTD compensation beginning July 21, 1999 through January 5, 2006, because Dr. Goodall's C-84s certified disability first due to conditions which had reached MMI and then to newly allowed conditions. Because of this conflict in his opinion, it is not an abuse of discretion for the commission to find that there was no persuasive medical evidence of disability for that time period.
 {¶ 30} Further, it is clear that the commission relied on the August 2006 C-84 to award relator TTD compensation beginning January 6, 2006. The commission concluded that this C-84 established that relator's newly allowed conditions alone had rendered her temporarily disabled beginning January 6, 2006. Relator argues that there is an abundance of evidence in the record to support her contention that new and changed circumstances existed as early as December 1999, when an MRI of her brain was approved for her cricopharyngeus, dysphagia, and lingual weakness. However, as noted previously, a review of Dr. Goodall's office notes from 1999 forward demonstrates continued complaints and treatment for cervical and lumbar back pain. Although relator's claim was later allowed for cervical radiculopathy, it was originally allowed for cervical sprain and radiculitis. Nothing in Dr. Goodall's office notes specifically attribute these symptoms to her cervical radiculopathy. Although her claim was additionally allowed for a different cervical condition, Dr. Goodall's office notes demonstrate treatment for her cervical area from the beginning of her claim. As such, the magistrate finds that the commission did not abuse its discretion in failing to find that new and changed *Page 14 
circumstances existed earlier than January 2006 when Dr. Goodall certified that relator was disabled due solely to the newly allowed conditions.
 {¶ 31} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion and this court should deny her request for a writ of mandamus.